IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable R. Brooke Jackson

Civil Action No. 09CV645

PATRICK TORREY,

    Plaintiff,

v.

QWEST COMMUNICATIONS INTERNATIONAL, INC.

    Defendant.

## ORDER

Plaintiff Patrick Torrey seeks long term disability ("LTD") benefits pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. Pending before the Court is Defendant's Motion for Entry of Judgment Following Remand [docket #61], which has been fully briefed.

### FACTS

The facts were discussed at length in Judge Arguello's remand order of February 28, 2011. Order Overruling and Remanding Benefits Determination [docket #53](hereafter "Feb. 28, 2011 Order"). I nevertheless will restate certain key facts in addition to discussing information developed after the remand.

<u>Initial Benefits Determination</u>

Mr. Torrey was employed by Qwest Corporation as a Network Technician, a job rated as "heavy" in terms of physical exertion, until June 5, 2006. Shortly before that date Mr. Torrey,

then age 39 (date of birth September 5, 1966), fell down a flight of stairs, exacerbating a pre-existing lower back condition. His primary care physician, James Gregory, M.D., referred him to a specialist in pain and physical medicine, Lawrence A. Lesnak, D.O. Dr. Lesnak ordered an MRI which revealed degenerative disc disease and a right sided bulging disc at L5-S1.

Meanwhile, after unsuccessfully attempting to return to work, he applied for and was granted short term disability ("STD") benefits under the Qwest Disability Plan ("the Plan"). The Plan is sponsored, funded and administered by the defendant, Qwest Communications International, Inc. ("QCII"). The specific administrator of the plan was the Qwest Employee Benefits Committee, which in turn delegated the administration to a third party administrator, the Reed Group Ltd. The Reed Group administers the Plan under the name Qwest Disability Group.[1]

Dr. Lesnak referred Mr. Torrey to an orthopedic surgeon, Amit O. Agarwala, M.D, who saw him for the first time in August 2006. On September 12, 2006 Dr. Gregory sent the third party administrator copies of his office's records, including records of Mr. Torrey's visit to Dr. Agarwala and an MRI report, and indicated that he had no further input regarding Mr. Torrey's disability status except that "he is still unable to work." R. 478.

Dr. Agarwala initially tried conservative measures, including epidural injections and physical therapy. When those measures did not relieve Mr. Torrey's back and leg pain, Dr. Agarwala recommended spinal fusion surgery. A second, concurring opinion was obtained from orthopedic surgeon Hugh McPherson, M.D. Dr. Agarwala performed the surgery on January 31, 2007. R. 462. The surgery appeared to be successful, but notwithstanding medication and physical therapy, Mr. Torrey continued to have pain in his lower back and right leg.

---

[1] "Qwest" has subsequently become "CenturyLink" in some or all of these names.

Plaintiff's 52 weeks of STD benefits were exhausted as of June 21, 2007, and he applied for LTD benefits. Under the terms of the Plan, disability for purposes of the first 12 months of LTD benefits means that the Participant is unable to perform his last Company-assigned job. R. 9. His application for LTD benefits under that definition was approved effective June 22, 2007. R. 146. The "Decision Rationale," authored by Susan Mackin, Case Manager, states, "[h]e meet (sic) the definition of disability and is not considered gainful." *Ibid.*

Mr. Torrey continued to be followed by Dr. Lesnak and two other physical medicine specialists, Angelo E. Romagosa, M.D. and Roberta Anderson-Oser, M.D. In April 2008 Mr. Torrey received facet joint injections and nerve blocks. Also in April 2008 the Plan's third party administrator requested updated medical information. Dr. Romagosa provided medical records, including a diagnosis of intermittent right L5 radiculopathy (a compression or irritation of a nerve). R. 185. This was confirmed by an EMG test in May 2008. Dr. Romagosa did not, however, provide an opinion on Mr. Torrey's ability to work.

The first 12 months of LTD benefits expired on June 21, 2008. At that point the Plan's definition of "disability" changes:

> After a Participant has received LTD Benefits for 12 months, Disability means (1) the Participant is unable to engage in any occupation or employment, which inability is supported by Objective Medical Documentation, or (2) the Participant is unable to engage in any occupation or employment, for which he may reasonably become qualified for by training, education or experience, other than a job that pays less than 60% of his Based Pay at the time the Participant terminates employment due to the Disability.

R. 9-10.[2]

Notwithstanding the change in definition, QWII continued to provide LTD benefits. However, the third party administrator retained Anil Agarwal, M.D., an orthopedic surgeon

---

[2] References to the administrative record on which the original disability determination was made will be shown as "R. __." The page number is the defendant's Bates number.

3

(unrelated to Dr. Amit Agarwala who performed the spinal fusion surgery), to conduct an Independent Medical Examination ("IME"). Based upon his review of Mr. Torrey's medical history since June 5, 2006 and his physical examination of Mr. Torrey on October 10, 2008, Dr. Agarwal diagnosed acute mild lumbar strain, temporary duration; postoperative L5-S1 degenerative disk disease with lumbar radiculitis; narcotic prescription drug dependence; and symptom magnification/malingering. R. 433. By way of further explanation, Dr. Agarwal opined that Mr. Torrey had a mild lumbar strain due to a fall; that there was no objective evidence of radiological disk herniation or physical signs of radiculopathy; that the surgery was not medically necessary or appropriate; and that he has received excessive amounts of narcotic pain medications. R. 433-34.

The bottom line of Dr. Agarwal's opinion was that Mr. Torrey could return to full time work, subject to the restrictions that he not sit more than four hours, stand for more than four hours, or walk more than two to three hours per eight hour work day, and that he not lift or carry more than 15 pounds. R. 435. The doctor stated, "obviously he is not disabled and [it is] bad for him to be labeled as disabled." R. 436. Reasons given for the latter opinion included that Mr. Torrey had no neurological deficit and that if he did not return to work he would become drug dependent and start suffering from depression. *Ibid.*

The third party administrator hired a vocational consultant, Kathryn Duder, MA, CRC, CEAS, to perform a "transitional skills analysis." According to her report of November 18, 2008, her assignment was to assess Mr. Torrey's education, training, experience and work restrictions "to determine if the claimant can perform occupations that can earn greater than $2,777.05 per month." R. 249. Based upon Dr. Agarwal's IME, Ms. Duder assumed a lifting limit of 15 pounds, a carrying limit of 10 pounds, a sitting limit of four out of eight hours, a

4

standing limit of four out of 8 hours, and a walking limit of three out of eight hours. She concluded that Mr. Torrey could perform a number of available jobs in the Denver area in the light and sedentary categories, including sales representative, dispatcher, communications consultant, and maintenance service dispatcher. According to the Dictionary of Occupational Titles, all of these jobs exceed Mr. Torrey's abilities as determined by the IME. The dispatcher jobs require sitting 95% of the time, and the sales representative and communications consultant positions involve lifting or carrying up to 20 pounds occasionally. However, Ms. Duder stated that, based upon her experience, the occupations listed do not actually require lifting or carrying that exceed the IME's limitations. She concluded that the listed occupations "are consistent with the claimant's work history, skills, education/training, physical capabilities, and labor market," and that he would be capable of earning more than $2,777.05 per month. R. 260.

In December 2008 Mr. Torrey began treatment with Peter N. Reusswig, M.D., a pain management specialist. He diagnosed failed back surgery syndrome, neuropathic pain, myofacial pain, myospasms, and "opioid dependency for pain control, opioid tolerance."

On January 12, 2009, QCII informed Mr. Torrey that his LTD benefits were denied effective December 31, 2008. R. 245-49. The denial was based on Dr. Agarwal's work restrictions and Ms. Duder's transitional skills analysis. Mr. Torrey appealed that decision to the Qwest Disability Appeals Board. The Appeals Board affirmed the denial of the claim on February 18, 2009.

Mr. Torrey then appealed again, this time with the assistance of legal counsel. Among other things counsel provided updated records from Dr. Reusswig, including a letter dated February 20, 2009 in which Dr. Reusswig stated, "[w]ithout reiterating his entire history, and based on the three visits that I have had with him, it would be my recommendation at this point

5

that the patent be limited to part-time work only based on his diagnosis and present pain complaints." R. 163. Counsel also notified defendant in a letter dated March 4, 2009 that an Administrative Law Judge ("ALJ") had that day ruled that Mr. Torrey was disabled for purposes of benefits under the Social Security Disability Insurance program, that a written order should be available in two or three weeks, and that counsel would forward the written order as soon as possible. R. 160. Counsel also provided an audio recording of Dr. Agarwal's IME examination, surreptitiously recorded by Mr. Torrey. [#37].[3]

As part of the appellate review the administrator engaged a second independent orthopedic surgeon, Vicki Kalen, M.D., to review plaintiff's medical records. In her report of March 12, 2009 Dr. Kalen concluded that she was "in complete agreement with the IME by Dr. Anil Agarwal performed on 10/10/08." R. 108. She stated that multiple physical examinations over a two and one-half year period had failed to show any neurologic deficits. Rather, "the only remarkable objective finding is of a chronic right L5 radiculopathy on the EMG of 5/06/08." *Ibid.* She concluded, "I do not think that there are significant objective findings to explain this claimant's subjective complaints or to substantiate an inability to work." *Ibid.* Rather, in her opinion, Mr. Torrey was capable of working in a sedentary to light occupation with a 15-pound lifting limit, a 10-pound carrying limit, a four hour sitting limit within an eight-hour day, and a walking limit of two to three hours per day. *Ibid.*

On March 17, 2009 the appeals board again upheld the denial of benefits. This lawsuit was filed on March 24, 2009.

---

[3] Whether the surreptitious recording of a doctor's independent medical examination is appropriate is not a question before the Court. *Cf. Forster v. County of Santa Barbara,* 896 F. 2d 1146, 1148-49 (9th Cir. 1990)(surreptitious recording of an office visit by an undercover agent does not violate the physician's fourth amendment rights). Suffice it to say that, like it or not, the transcript is part of the administrative record. The transcript is of marginal quality, but it does raise questions about the quality of the examination.

6

Social Security Disability Determination

On March 31, 2009 the ALJ issued his formal determination that Mr. Torrey was entitled to disability benefits. The written order, sometimes referred to by the parties to this case as the "SSA determination," obviously was not considered by the administrator of the Plan.

"Disability" for Social Security disability benefits purposes means "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months." [#59-3] at 1.[4] The ALJ took testimony from Mr. Torrey and reviewed his medical history, including his initial diagnosis and treatment following his fall in June 2006; his surgery; and the postoperative care he received, including the treatment and diagnosis of Dr. Reusswig. The ALJ found that Mr. Torrey had two "severe impairments": degenerative disk disease, status post discectomy and fusion at L5-S1; and failed back surgery syndrome." *Id.* at 3.

The ALJ found that Mr. Torrey is "unable to perform any work on a regular and sustained basis, for eight hours a day, five days a week, or an equivalent full-time work schedule." He considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," and concluded that "the claimant's medically determinable impairment could reasonably be expected to produce the alleged symptoms." He found that Mr. Torrey's statements concerning his symptoms and their limited effects were "generally credible." The ALJ rejected an assessment of the state Disability Determination Service examiner that Mr. Torrey could perform light

---

[4] The SSA determination was filed with the Court, among other places, as an exhibit to plaintiff's opening brief post remand [#59], and I will refer to it by its docket number. It is also found in the post-remand administrative record, which was filed as docket #57 at 48-83. I will hereafter use the term RemandAR to refer to the post-remand administrative record.

exertion work within one year after his surgery, noting that additional medical evidence had been submitted since that DDS review. The ALJ instead credited Dr. Reusswig's assessment, notably, that Mr. Torrey would be limited to part-time work, which the ALJ found to be "supported by the weight of the medical evidence, which documents ongoing pain despite surgery and conservative treatment." *Id.* at 4.

The ALJ found that Mr. Torrey could not perform his past relevant work, that his job skills did not transfer to other occupations within his residual functional capacity, and that "there are no jobs existing in significant numbers in the economy that the claimant would be able to perform." Accordingly, he found that Mr. Torrey had been disabled within the meaning of sections 216(i) and 223(d) of the Social Security Act since June 5, 2006. *Id.* at 5.

Remand

Judge Arguello found that "this is a close case as there is a lack of strong evidence on either side demonstrating the nature and extent of Plaintiff's disability." Feb. 28 Order at 15. The Court noted that Mr. Torrey relied upon the SSA award and the opinions of Dr. Gregory and Dr. Reusswig. However, neither the third party administrator nor the Court could determine the relevance of the SSA opinion without seeing it. The Court found that Dr. Gregory's opinion of September 16, 2006 that Mr. Torrey still could not work had limited value, because it pre-dated Mr. Torrey's back surgery. The Court somewhat discounted Dr. Reusswig's recommendation of February 20, 2009 that Mr. Torrey be limited to part-time work. Although Dr. Reusswig had indicated, contrary to defendant's assertion, that he had considered Mr. Torrey's medical history, he had not examined Mr. Torrey on February 20, 2009 to obtain objective evidence of Mr. Torrey's "present pain complaints." *Id.* at 16.

However, the Court found that defendant's objective evidence was no better. The IME by Dr. Agarwal found "symptom magnification/malingering," which defendant conceded was not supported by the evidence. Defendant's effort to separate itself from the tainted IME did not persuade the Court, because both the third party administrator and the transitional skills analysis relied on the IME's work restrictions. This also negatively impacted Dr. Kalen's review, because she expressed complete agreement with the IME. *Id.* at 17.

Judge Arguello therefore remanded the case "in order to allow the [third party administrator] to consider additional evidence." The Court specified that the third party administrator should be provided with a copy of the SSA disability determination. The Court further ordered that "the parties may supplement the record with *additional objective medical evidence that bears on Plaintiff's claim*." (emphasis added).

Plaintiff's Post-Remand Submissions

On March 10, 2011 plaintiff's counsel submitted copies of (1) the SSA determination and supporting medical records, and (2) the transcript of the surreptitious recording of the IME to the third party administrator. RemandAR [#57] at 29, 48-83, 129-135. Plaintiff later submitted copies of Kaiser records covering parts of 2009 and 2010, *id.* at 362-567, and a letter dated March 17, 2011 from Dr. Gregory indicating that after Mr. Torrey returned to his office on October 28, 2010, he did not attempt a complete re-evaluation because that would best be handled by an orthopedic surgeon, but that he would agree with Dr. Reusswig's opinion regarding Mr. Torrey's work capabilities. [#59-4].

Defendant's Post-Remand Submissions.

The third party administrator retained another orthopedic surgeon, William Andrews, M.D., and sent him the complete file. [#59-1] at 2. Dr. Andrews was instructed that, for

9

purposes of the LTD claim at issue, "Disability means the Participant is unable to engage in any occupation or employment, which inability is supported by Objective Medical Documentation, or may reasonably become qualified by training, education or experience, other than a job that pays less than 50% of his Base Pay at the time the Participant terminates employment due to the Disability." [#59-1] at 6.[5] Dr. Andrews was asked to form an opinion as to whether Mr. Torrey was disabled within that definition as of December 31, 2008 based upon the objective medical information provided. *Id.* at 6.

However, Dr. Andrews was instructed not to consider information that postdated December 31, 2008. *Id.* at 7. He subsequently confirmed that reviews after that date had no impact on his assessment, and that his review was based solely on his review of medical records up to December 31, 2008. *Ibid.* This eliminated from his consideration some of the materials that he had been provided, including the SSA determination, Dr. Reusswig's opinion, Dr. Gregory's letter and the Kaiser records. Dr. Andrews also confirmed, in an addendum to his report, that he had not considered the IME conducted by Dr. Agarwal or the peer review conducted by Dr. Kalen. *Id.* at 8.

In his report Dr. Andrews commented that "none of the reports from Dr. Lesnak, Dr. Romagosa, Dr. Anderson-Oser or Dr. Agarwala, postoperatively, revealed any focal weakness or any significant objective findings. Mr. Torrey's major complaint postoperatively has been pain not responsive to all conservative measures." [#54-1] at 5. He concluded:

- "As of December 31, 2008, Mr. Torrey was capable of working with restrictions, which would correlate to a sedentary to light physical demands capacity." [#54] at 6 of 10.

---

[5] The reference to "less than 50% of his Base Pay" is a mistake by either the third party administrator or Dr. Andrews. The Plan says "less than 60%." The mistake is not material to Dr. Andrews' opinion or this Court's analysis.

- Permanent restrictions are (1) walking limited to one hour at a time, three to four hours per eight hour shift; (2) no repetitive bending, twisting, stooping, climbing or crawling; (3) unlimited sitting so long as he could change positions hourly for several minutes; (4) lifting limited to 15 to 20 pounds occasionally and 10 pounds frequently; and (5) carrying, pushing or pulling limited to 20 pounds occasionally; and (6) occasional overhead reaching.
- Fingering, handling or reaching while sitting are not limited.
- Mr. Torrey's medical care was appropriate, and he could not identify any new treatments that would change his status.
- "Mr. Torrey had ongoing restrictions and limitations as of December 31, 2008, but he was capable of working full time in the capacity noted above."

*Id.* at 6-7.

Final Benefits Determination

In a letter dated May 26, 2011 CenturyLink Disability Services, apparently the successor to Qwest Employee Benefits Committee, upheld the original denial of LTD benefits effective January 1, 2009. [#59-1]. The letter relied heavily on Dr. Andrews' report. It did not mention the SSA disability determination. [#59-1] at 2-8.

An amended determination letter was issued on May 27, 2011. [#59-2]. In the amended letter defendant added references to Ms. Duder's transferrable skills analysis and to the SSA disability determination. The letter states that the third party administrator had considered the SSA determination but was not persuaded because:

1. The decision makers were different.
2. The definitions of "disability" were different.

11

      3. The plaintiff had decided what medical information to provide to the SSA, and the SSA did not request additional information. In contrast, the third party administrator obtained "independent expert medical review of the documentation and independent medical opinions." The letter states that "the medical information provided to the SSA was also reviewed by Dr. Andrews, as was the SSA disability determination itself. The medical information available to Dr. Andrews was more extensive than the medical information available to SSA."

      4. The SSA relied on Mr. Torrey's subjective testimony, whereas Dr. Andrews relied on the objective medical documentation.

*Id.* at 8-9.

The pending motion asks the Court to enter judgment as a matter of law upholding the May 27, 2011 denial of Mr. Torrey's LTD claim.

### **STANDARD OF REVIEW**

The Plan grants the administrator discretionary authority to determine eligibility for benefits. Accordingly, review is under an abuse of discretion (arbitrary and capricious) standard. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989). The administrator's decision will be upheld "so long as it is predicated on a reasoned basis" and supported by substantial evidence. *Adamson v. Unum Life Ins. Co.,* 455 F.3d 1209, 1212 (10th Cir. 2006). Substantial evidence means "more than a scintilla but less than a preponderance." *Rekstad v. U.S. Bancorp.,* 451 F.3d 1114, 1119-20 (10th Cir. 2006). However, Qwest entities are both the administrator and payor. While that conflict position does not change the scope of review, it is a factor to be considered in deciding whether there has been an abuse of discretion. *Firestone,* 489 U.S. at 115.

## **CONCLUSIONS**

The ultimate issue presented to this Court is whether defendant abused its discretion in determining that Mr. Torrey is not disabled within the meaning of the Plan's definition of disability. However, that issue comes before the Court in a somewhat unusual posture. When the parties first presented the issue for decision, based on an administrate record and briefs, the Court determined that there was insufficient evidence in the record for the Court to make a fair and rational decision for either party. Accordingly, while the Court "overruled" the administrator's denial of LTD benefits, the reversal was without prejudice. Rather, the Court remanded the case with essentially two instructions: (1) the administrator should consider the SSA determination which was issued in written form shortly after the denial of plaintiff's appeal; and (2) either party could supplement the record with additional objective medical evidence.

The case returns now to the Court for its resolution of the disability issue based on the original record plus the supplementation that has occurred. Unfortunately, the parties took significantly different approaches to what was relevant following the remand. Plaintiff for the most part followed the letter and spirit of Judge Arguello's order. Defendant, in my view, essentially did not. The different approaches largely drive the result that this Court now reaches.

Plaintiff, of course, supplied the SSA determination to the administrator. Beyond that, he added relatively little. Dr. Gregory's letter of March 17, 2011 was new but did little more than express his opinion that he tends to credit Dr. Reusswig's opinion. Plaintiff added the Kaiser records, but counsel did not include those among the records he attached as exhibits to plaintiff's opening brief on remand characterized as the most pertinent documents.

Defendant engaged a new independent expert, obtained his review of certain medical records, and added the third party administrator's comments on the SSA determination. One

might think that the defendant's additions to the record were the most significant. In my view, due to the way those additions were limited, they were not.

Starting with the plaintiff's addition first, we can all agree that SSA disability determinations are not dispositive. *See, e.g., Meraou v. Williams Co. Long Term Disability Plan,* 221 F. App'x 696, 706 (10th Cir. 2007). Neither can they be ignored. *See Metropolitan Life Ins. Co. v. Glenn,* 554 U.S. 105, 118 (2008). The weight that a SSA determination will be given inevitably is a case by case determination, affected by such things as the quality of the rest of the administrative record, the definition of disability used by the SSA, the quality of evidence presented to the SSA, the reasonableness of the SSA determination, and other factors that might be deemed relevant in a particular case. In the present case, weighing those factors, I find that the SSA determination is entitled to substantial weight.

To begin with, as indicated above, the record as it existed prior to the remand was relatively thin, in quality if not in quantity. Then there is the fact that this Plan, like some other plans, required Mr. Torrey to apply for SSDI benefits and to offset any SSDI benefits received against any LTD benefits for which he might be entitled. The SSA process occurred more or less contemporaneously with the administrator's review of Mr. Torrey's LTD claim. His SSDI application was pending when the third party administrator issued its initial denial of the LTD claim. While his administrative appeal of that denial was pending, the ALJ announced that he had determined that Mr. Torrey was disabled and entitled to SSDI benefits. Plaintiff's counsel informed the defendant of that decision and indicated that a written order would be forthcoming and forwarded to the third party administrator shortly. The administrator denied the appeal without waiting for the written decision, which was issued exactly two weeks later.

The ALJ's decision appears on the face of the order to be reasonable. The ALJ followed the standard five-step process prescribed by Social Security regulations. He reviewed Mr. Torrey's history of back and leg problems, based both on Mr. Torrey's subjective testimony and a review of medical records. He found Mr. Torrey's testimony to be generally credible – a type of finding to which a reviewing court would generally give substantial deference -- and that his symptoms as he described them were consistent with the objective medical evidence. He gave greater weight to the opinions of Mr. Torrey's treating physician, Dr. Reusswig, than to the opinion of the Social Security Disability Determination Service's own examiner. He applied vocational guidelines in the context of Mr. Torrey's age, education, work experience, and "residual functional capacity" determination. ("RFC" score). He defined "disability" per the Social Security Act as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments," and concluded from the evidence presented to him that Mr. Torrey was disabled.

There are certain items of evidence that do not appear to have been presented to the ALJ. He makes no reference to Dr. Agarwal's IME report, and I must assume that he did not have it. However, that report has been discredited by the Court and essentially abandoned by the defendant in this case. He did not have Dr. Kalen's peer review, which was issued after the ALJ hearing, but that too has been discredited by this Court. So far as the ALJ order discloses, he did not have Ms. Duder's transitional skills analysis, but he consulted different vocational information. Might it have been better if the ALJ had had all this information? Sure. I note, however, that even Dr. Andrews did not consider the Agarwal and Kalen reports. And, I have no reason to find that the vocational information obtained by the ALJ was less valuable than Ms. Duder's information.

Again, for emphasis, I stress that an ALJ determination is not dispositive of a claim under an ERISA plan. However, based upon my review of the ALJ's order, and how it fits into a record that was otherwise lacking, I have no difficulty in concluding that this particular ALJ determination was entitled to be given at least some weight.

Defendant's actions in the context of the remand order are, frankly, baffling. I certainly have no problem with the defendant's retention of another orthopedic surgeon to review the records, any more than I fault the defendant for hiring two previous independent orthopedic surgeons to review the case. That is entirely consistent with what a fiduciary should do to inform himself on the medical issues. However, the defendant placed Dr. Andrews in handcuffs. It sent the SSA determination to him as part of the complete file but then forbade him from considering it. It sent Dr. Reusswig's opinion (which was already part of the administrative record) and other post December 31, 2008 materials to him as part of the complete file but forbade Dr. Andrews from considering it. By doing so the defendant largely undermined the significance of Dr. Andrews' opinion in the mind of this Court.

Moreover, both the third party administrator and even defense counsel appear not to realize what they did. In the amended determination letter of May 27, 2011, the third party administrator states: "The medical information provided to SSA was also reviewed by Dr. Andrews, as was the SSA disability determination itself." Both parts of that statement are unsupported by the record. Although Dr. Reusswig's recommendation of February 20, 2009 that Mr. Torrey be limited to part-time work was provided to the SSA and expressly mentioned as part of the basis for the ALJ's decision, the December 31, 2008 cutoff, which Dr. Andrews stated that he honored, by definition precluded his consideration of that recommendation. His report notes only that "Dr. Reusswig from pain medicine has followed him since 2008 and has been

16

treating his chronic pain." Likewise, there is no support in the record for the statement that Dr. Andrews reviewed the SSA determination (or for the statement in defendant's pending motion at page 7 that he did not find it to be significant). Dr. Andrews' report does not mention the SSA determination, understandably so because he was instructed only to consider information predating December 31, 2008.

My second concern about the defendant's response to Judge Arguello's remand order arises from the third party administrator's own consideration, or lack of consideration, of the SSA determination. The May 26, 2011 letter reaffirming defendant's denial of Mr. Torrey's claim does not even mention the SSA determination. This "oversight" was corrected in the amended determination letter issued on the next day. However, the discussion of the SSA order in that letter provides little support for the third party administrator's representation that it had given the SSA determination "full consideration." Consider the four reasons given for the administrator's statement that the SSA determination was not persuasive:

- The letter states that the two processes involve different parties as decision makers: SSA and the Reed Group. That obviously is true in this case and every case where there is a Social Security Disability determination. However, courts have held that SSA determinations should be considered.

- The letter states that the SSA's definition of disability is different from that of the Plan. That too is true, but the definition used by the ALJ is as least as strict, if not stricter, than the Plan's definition of disability.

- The letter states that Mr. Torrey selected the information presented to the SSA, whereas the third party administrator obtained "independent expert medical review of the documentation and independent medical opinions." The implication of the first statement

17

is that the ALJ did not have all of the relevant information. With the exceptions noted and discussed above, which in context I do not deem to be material, there is no support in the record for such an inference. The second statement is, at best, an exaggeration. The "independent medical opinions" obtained by the third party administrator were the Agarwal IME and Kalen peer review, both of which have been discounted, and Dr. Andrews' opinion, which was based upon an incomplete review of the relevant information.

- Finally, the letter appears to fault the ALJ for relying on subjective testimony, in contrast to Dr. Andrews' reliance on objective medical information. The Plan's definition of disability as written, particularly subpart (2), does not preclude consideration of subjective evidence. The ALJ considered both subjective and objective information and expressly found Mr. Torrey's testimony about his symptoms to be consistent with the objective medical evidence. I do not disagree that Dr. Andrews considered objective medical information. My concern is that he was not permitted to consider all relevant and material information.

When the dust settles, I find that by the simple act of providing a copy of the SSA determination to the third party administrator, as directed by the Court, the plaintiff materially added to the record's support for his position. The Court's review of a plan administrator's denial of benefits is limited to the administrative record. *Brown v. Hartford Life Ins. Co.*, 428 F. App'x 817, 820 (10th Cir. 2011). A plan administrator can only be expected to consider the record as it was at the time of the decision. *Sandoval v. Aetna Life and Cas. Ins. Co.,* 967 F.2d 377, 381 (10th Cir. 1992). However, the record as supplemented is the record on which this claim and the final denial of the claim must be judged.

18

The defendant supplemented the record with the opinion of Dr. Andrews. I have no reason to Question Dr. Andrews' experience, ability, or the work that he did. Had he been encouraged to consider all of the information provided to him; and had he as part of such a review thoughtfully analyzed the ALJ's analysis and Dr. Reusswig's opinion; and had he come to the same conclusions after doing so; I may well have found his opinion to be persuasive. Had the third party administrator's denial letter, particularly the first denial letter, thoughtfully analyzed the ALJ's specific findings and explained why the administrator believed that the evidence on which the ALJ relied was insufficient or why the ALJ's conclusions were erroneous, then my view of that letter may well have been different. This Court's role is not, after all, to conduct a de novo review. So long as the Court can find that the administrator's denial of the claim was predicated on a reasoned basis and supported by substantial evidence, *Adamson,* 455 F.3d at 1212, or put another way "the product of a principled and deliberative reasoning process," *Montour v. Hartford Life & Acc. Ins. Co.,* 588 F.3d 623, 636 (9th Cir. 2009)(internal quotation and citation omitted), the Court's obligation is to affirm the administrator.

However, it appears to this Court that, despite the remand order, the defendant paid scant attention to the SSA determination, without articulating a reasonable basis for doing so, and instead relied on the opinion of a new expert whom the defendant did not permit to consider all of the potentially relevant and material evidence. ERISA was enacted "to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Airlines, Inc.,* 463 U.S. 85, 90 (1983). Defendant's post-remand actions were not, in my view, consistent with that goal.

The Court therefore concludes that the denial of the LTD benefits claim without a meaningful review of all relevant information was arbitrary, capricious and an abuse of discretion.

### **ORDER**

For the foregoing reasons, the Court denies defendant's motion [#61] for judgment in defendant's favor as a matter of law. The Court reverses the defendant's denial of LTD benefits and orders that final judgment be entered in favor of the plaintiff, Patrick Torrey, and against the defendant, Qwest Communications International, Inc. or its successor. The defendant is ordered to provide to the plaintiff long term disability benefits as provided by the Plan from and after January 1, 2009, taking into account the appropriate offset for SSDI benefits received. Plaintiff is awarded his reasonable attorney's fees, interest and costs.

DATED this day 12th of March, 2012.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge